**AMERICAN INDIAN AGRICULTURAL CREDIT CONSORTIUM, INC., Plaintiff,**

v.

**John FREDERICKS, Jr., Defendant.**

No. 82–K–722.

United States District Court, D. Colorado.

Dec. 2, 1982.

Bruce R. Greene, Boulder, Colo., for plaintiff.

John Fredericks, Jr., pro se.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a motion to dismiss an action alleging default on a promissory note. The original holder of the note was American Indian National Bank, which later endorsed the note over to the plaintiff, American Indian Agricultural Credit Consortium, Inc. The Consortium alleges that defendant John Fredericks failed to pay the final installment of principal and interest, which at the time of default amounted to $12,360. Plaintiff seeks this amount, interest from the maturity date and attorney fees and costs. A North Dakota attorney who entered an appearance for the defendant has withdrawn and the plaintiff is proceeding *pro se.* Defendant moved to dismiss for lack of subject matter and personal jurisdiction. He argues that, as an Indian, he can be sued only in the Tribal Court of the Three Affiliated Tribes, Mandaree, North Dakota. In addition, defendant argues that because the note was executed and spent on the Fort Berthold Reservation, the transaction is an internal reservation affair, over which only the Tribal Court can have jurisdiction.

In response, plaintiff argues that this court has jurisdiction on the basis of the diversity between defendant, a North Dakota resident, and itself, a non-profit corporation with its principal place of business in Colorado. Plaintiff asserts that to defeat a motion to dismiss for lack of jurisdiction requires only a *prima facie* showing of jurisdictional facts. *Parker Drilling Co. v. Metlakatla Indian Community,* 451 F.Supp. 1127, 1131 (D.Alaska 1978). By its showing of diversity between itself and the defendant, as well as of the required amount in controversy, plaintiff Consortium contends that it has made an adequate *prima facie* showing.

While plaintiff has alleged diversity to support subject matter jurisdiction, neither party has presented any briefs or affidavits which support or deny this court's authority to assert personal jurisdiction over the defendant. Defendant has submitted an affidavit in support of his motion to dismiss for lack of subject matter jurisdiction which states that he resides in North Dakota and that the note was executed in North Dakota, but this information is not sufficient to

determine the issue of personal jurisdiction. The parties should familiarize themselves with the comprehensive discussion of personal jurisdiction in *Ruggieri v. General Well Service, Inc.,* 535 F.Supp. 525 (D.Colo. 1982), and then submit further briefs and affidavits concerning the contacts that defendant has had with the State of Colorado. At that time I will reconsider the motion to dismiss for lack of personal jurisdiction. At this time I limit my opinion to a discussion of subject matter jurisdiction.

Plaintiff has established diversity between the parties, and a controversy which exceeds the minimum monetary requirement. Beyond the question of diversity, however, is the issue of whether a decision by this court to take jurisdiction would constitute an unwarranted intrusion into the sovereignty of the Three Affiliated Tribes and upon the independent jurisdiction of its tribal court.

The principle that the various American Indian nations do enjoy a degree of legal and territorial sovereignty was first established in Justice Marshall's landmark opinion, *Worchester v. Georgia,* 6 Pet. 515, 8 L.Ed. 483 (1830); and was most recently reiterated by the Supreme Court in *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). In reasserting the historic principle of *Worchester,* the *Williams* court set up a broad infringement test, referred to by the plaintiff, which prohibits any action in a non-Indian court constituting interference with internal tribal and reservation affairs. Recently, federal courts have applied *Williams* in finding both a disputed lease of oil well facilities on tribal land to a tribal non-member, and a tort claim by a tribe's non-Indian attorney against the governing board to be internal tribal affairs not cognizable by a federal court. (*Hot Oil Service, Inc. v. Hall,* 366 F.2d 295 (9th Cir.1965) and *Littell v. Nakai,* 344 F.2d 486 (9th Cir.1965), *cert. denied,* 382 U.S. 986, 86 S.Ct. 531, 15 L.Ed.2d 474.)

However, where an action does not concern a purely internal tribal matter, federal jurisdiction may be consistent with *Williams. Poitra v. Demarrias,* 502 F.2d 23 (8th Cir.1974), *cert. denied* 421 U.S. 934, 95 S.Ct. 1664, 44 L.Ed.2d 93 (1975), and *American Indian National Bank v. Red Owl,* 478 F.Supp. 302 (D.S.D.1979). This distinction necessitates consideration of two issues. One is the question of whether a controversy constitutes an internal tribal matter. More involved is the question of whether federal judicial policy should allow an absence of state jurisdiction to preclude federal jurisdiction. Both *Poitra* and *Red Owl* answered this question in the negative.

The rationale is that Indian courts, which are creations of federal law, need protection of their jurisdiction against the intrusion of state courts only, not federal courts. In *Poitra,* diversity jurisdiction was found to lie in federal court when the cause of action was for wrongful death arising out of an auto accident between two Indians residing at opposite ends of a reservation, one within North Dakota and one within South Dakota state lines. The defendant there argued that the lack of jurisdiction of the state court, arising from the Indian parties' special status under *Williams,* necessarily implied a similar lack of jurisdiction for the federal court. Otherwise, defendants argued, the *Erie v. Tompkins* policy of harmonizing the rights available in both federal and state forums would be compromised. Defendant Fredericks makes a similar argument in the instant case on the strength of a state statute, found at North Dakota Century Code § 27–19–01 et seq., which allows the bringing of civil actions involving Indians on reservations in North Dakota only upon the voluntary acceptance of state jurisdiction by the Indian parties. *Poitra* rejected the proposition that the establishment of federal jurisdiction over Indians depends on the prior establishment of state jurisdiction.

The *Poitra* court asserted that Indians enjoy their special immunity from state law only as a result of federal law. Therefore, federal jurisdiction would not impinge on state jurisdiction in contravention of *Erie,* where the state itself has not created an additional immunity for the Indians on independent state policy grounds: "The rea-

son that (a state) lacks jurisdiction over this civil action is because of the special status given Indians under *federal* law, not because of any *state* policy consideration." *Poitra, supra,* 502 F.2d at 27. (Emphasis in original). The district court in *Red Owl* applied *Poitra* specifically in holding that a state bar on its own jurisdiction compels a similar bar on federal jurisdiction only if the state restriction is a function of state policy rather than of federal law. The *Red Owl* court found no such state policy, and in a case with facts very similar to this, allowed a bank's action on a promissory note against a reservation Indian, noting that:

> ... the federal policy with regard to Tribal self-government is 'to prevent unwanted and unnecessary encroachment upon Indian tribes *by the states.* We fail to conceive of any Congressional or judicial policy limitations requiring the federal court to refuse adjudication of this or similar claims when its jurisdiction is properly invoked.' (Emphasis in original).

*American Indian National Bank v. Red Owl, supra,* at 305, (citing *Poitra, supra,* at 29). *See also Begay v. Kerr-McGee Corp.,* 682 F.2d 1311, 1315 (9th Cir.1982).

 Here, the only North Dakota restriction on action in its courts is the above-mentioned state statute. This is simply a codification of the general, federally imposed restrictions on suits against Indians under state law. As such, it manifests no distinct state policy on which federal adjudication of this dispute would impinge.

Although *Williams* and its successors do not set a specific standard for what constitutes the "purely internal affairs" of a sovereign Indian nation, it is apparent that this action is correctly brought in this court. In *Hot Oil* and *Littell,* disposition of tribal lands and a dispute within a tribe's governing body were involved, and these controversies were judged to be purely internal. At issue here, however, is a transaction between an outside corporation and an individual member of a tribe acting solely in his private capacity as signer of a promissory note now in default. Since I cannot detect any interference with reservation self government or internal tribal affairs, I hold that this court can properly exercise subject matter jurisdiction over this controversy.

IT IS ORDERED that the motion to dismiss for lack of subject matter jurisdiction is denied.

IT IS FURTHER ORDERED that the motion to dismiss for lack of personal jurisdiction is stayed pending the submission of further information necessary to determine whether the defendant has the necessary minimum contacts with the State of Colorado to allow this court to assert jurisdiction without violating due process. Defendant shall submit briefs, affidavits, or other pertinent information within 15 days from the date of this order, and plaintiff will have an additional 10 days to reply.