**Richard E. CONNOLLY, Jr., Plaintiff,**

v.

**Bruce W. FOUDREE; Guy E. Snyder, Carl A. Newman; and Keck, Mahin & Cate, Defendants.**

**No. 4–91–CV–10168.**

United States District Court, S.D. Iowa.

Feb. 7, 1992.

Grant K. Dugdale, Lawrence L. Marcucci, West Des Moines, Iowa, for plaintiff.

James C. Fifield, Thomas A. Finley, Glenn L. Smith, Des Moines, Iowa, for defendants.

## ORDER

CELESTE F. BREMER, United States Magistrate Judge.

The defendants move to preclude the testimony of plaintiff's expert witness based on a state statute requiring early disclosure of expert witnesses in professional liability cases. *See* Iowa Code § 668.11 (1991). This court must determine whether the state statute applies in federal court.

## FACTS

The plaintiff, Richard E. Connolly Jr., originally filed this lawsuit in the Iowa District Court for Polk County on September 28, 1990. He asserted negligence and breach of fiduciary duty claims against attorneys Bruce W. Foudree, Guy E. Snyder, Carl A. Neuman, and the law partnership of Keck, Mahin & Cate, all of Illinois. The defendants removed the action to this court based on diversity of citizenship. The defendants filed their answer to plaintiff's petition on April 1, 1991.

On October 8, 1991, the Clerk of Court notified the parties that the action would be dismissed within twenty days for failure to file the scheduling report required by the Federal Rules of Civil Procedure and

this court's local rules. *See* Fed.R.Civ.P. 16(b); N. & S.D.Iowa Civ.R. 16(a)(1); 19(b)(1)(D) (requiring a scheduling report within 120 days of the filing of the complaint). On October 29, 1991 (396 days after the complaint was filed and 211 days after the answer was filed), the parties submitted a scheduling report which stated the following with regard to expert witnesses:

a. Plaintiffs propose that all parties disclose all expert witnesses by April 1, 1992.

b. Defendants assert that the parties are bound by section 668.11, Code of Iowa (1991) which applies to this state claim for professional responsibility.

Thereafter, on November 6, 1991, this court[1] entered a scheduling order which states: "The parties are bound by section 668.11 Code of Iowa (1991) which applies to this state claim for professional responsibility."

Iowa Code section 668.11 provides:

1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:

a. The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.

b. The defendant within ninety days of plaintiff's certification.

2. If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.

3. This section does not apply to court appointed experts or to rebuttal experts called with the approval of the court.

The 180–day deadline established by the statute passed on September 29, 1991. On November 19, 1991, the plaintiff designated an expert witness. The defendants move to preclude plaintiff's expert testimony based on Iowa Code section 668.11(2). The plaintiff resists and, in the alternative, moves for leave to file a tardy expert designation.

## DISCUSSION

■ The Rules of Decision Act provides that "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652 (1988). The Supreme Court has stated the principles to be applied in determining whether to apply a particular rule of state law in an action brought in federal court under diversity of citizenship jurisdiction. First, in the absence of a conflicting state procedure, an applicable federal rule plainly controls. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 747, 100 S.Ct. 1978, 1983, 64 L.Ed.2d 659 (1980); *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965). Second, where a "direct collision" between a federal rule and the state practice occurs, the federal rule applies if it is within the scope of the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution. *Walker*, 446 U.S. at 748–50, 100 S.Ct. at 1983–85; *Hanna*, 380 U.S. at 470–72, 85 S.Ct. at 1142–45. Under this analysis, the first question is "whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the court." *Walker*, 446 U.S. at 749–50, 100 S.Ct. at 1984–85.

■ Third, in the absence of a federal rule directly on point, the conflicting state practice controls if it is "bound up" with the rights and obligations created by state law "in such a way that its application in the federal court is required." *Byrd v.*

---

1. The Hon. Ronald E. Longstaff, Chief United States Magistrate Judge for the Southern District of Iowa, now United States District Judge.

*Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 535, 78 S.Ct. 893, 899, 2 L.Ed.2d 953 (1958). *See also Guaranty Trust Co. of N.Y. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1469–70, 89 L.Ed. 2079 (1945). Under this analysis, the court must make "the typical, relatively unguided *Erie* choice" in light of "the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws." *Hanna,* 380 U.S. at 468, 471, 85 S.Ct. at 1142, 1143. *See also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 74–78, 58 S.Ct. 817, 820–822, 82 L.Ed. 1188 (1938).

■ No direct conflict exists between the federal rules and the state law at issue here. Under the federal rules, a party may through interrogatories require another party to identify expert witnesses and to state the subject matter, facts, opinions, and grounds for each opinion to which the expert is expected to testify. Fed.R.Civ.P. 26(b)(4)(A)(i). *See also* Iowa R.Civ.P. 125 (discovery of experts). The state statute goes beyond Rule 26 and its analogous state rule to require a plaintiff in a professional liability case to certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within 180 days of the defendant's answer. Iowa Code § 668.11(1)(a). Just as section 668.11 and Iowa Rule 125 can both apply in state court without conflict, so too section 668.11 and Federal Rule 26 may both apply in federal court in a diversity action. *Cf. Walker,* 446 U.S. at 752 n. 13, 100 S.Ct. at 1986 n. 13 (provision of state tolling statute conflicted with neither state nor federal rule governing commencement of actions).

Neither does section 668.11 conflict with this court's local rules. Within 120 days after filing of the complaint, counsel must file a proposed scheduling order including a statement as to whether expert witnesses will be retained by any party, and if so the general area of their testimony and an estimate of the date they will be retained and prepared for deposition. N. & S.D.Iowa Civ.R. 16(a)(1)(B). Again, section 668.11 simply goes beyond the requirements of the local rules. Accordingly, the resolution of the applicability of section 668.11 in federal court turns on the *Erie* analysis.

The parties strive to characterize section 668.11 as either substantive or procedural. However, the *York* case "made it clear that *Erie*-type problems were not to be solved by reference to any traditional or common-sense substantive-procedural distinction...." *Hanna,* 380 U.S. at 460–61, 85 S.Ct. at 1138–39. *See York,* 326 U.S. at 109, 65 S.Ct. at 1469; *Edelson v. Soricelli,* 610 F.2d 131, 133 (3d Cir.1979).

> In essence, the intent of [the *Erie*] decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.

*York,* 326 U.S. at 109, 65 S.Ct. at 1469. *See Walker,* 446 U.S. at 745, 100 S.Ct. at 1982. The *Erie* rule "is rooted in part in a realization that it would be unfair for the character or the result of a litigation materially to differ because the suit had been brought in a federal court." *Hanna,* 380 U.S. at 467, 85 S.Ct. at 1141.

The "outcome-determination" analysis, however, was not "intended to serve as a talisman." *Hanna,* 380 U.S. at 467, 85 S.Ct. at 1141. *See Byrd,* 356 U.S. at 537, 78 S.Ct. at 900. "[A]ffirmative countervailing considerations" are at work. *Byrd,* 356 U.S. at 537, 78 S.Ct. at 900. "The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction." *Id.* Where compliance with a state rule would disrupt an "essential characteristic of that system," the "policy of uniform enforcement of state-created rights and obligations" cannot exact compliance the state rule. *Id.* at 537–38, 78 S.Ct. at 900–01.

Under the *Erie* rule the federal courts have applied various state procedural and evidentiary requirements in malpractice cases. For example, the great weight of authority favors application in federal

court of state laws requiring screening or arbitration of malpractice claims before they may be tried. *See, e.g., Bledsoe v. Crowley,* 849 F.2d 639 (D.C.Cir.1988) (Md. law); *Seoane v. Ortho Pharmaceuticals, Inc.,* 660 F.2d 146, 149 n. 4 (5th Cir.1981), *aff'g,* 472 F.Supp. 468 (E.D.La.1979) (La. law); *Feinstein v. Massachusetts Gen. Hosp.,* 643 F.2d 880, 883–90 (1st Cir.1981) (Mass. law); *DiAntonio v. Northampton-Accomack Hosp.,* 628 F.2d 287, 290–91 (4th Cir.1980) (Va. law); *Davison v. Sinai Hosp. of Baltimore, Inc.,* 617 F.2d 361 (4th Cir.1980), *aff'g,* 462 F.Supp. 778 (D.Md. 1978) (Md. law); *Edelson v. Soricelli,* 610 F.2d 131, 133–41 (3d Cir.1979) (Pa. law); *Hines v. Elkhart Gen. Hosp.,* 603 F.2d 646 (7th Cir.1979) (Ind. law); *Woods v. Holy Cross Hosp.,* 591 F.2d 1164, 1168–69 n. 6 (5th Cir.1979) (Fla. law); *Truck Ins. Exch. v. Tetzlaff,* 683 F.Supp. 223, 226–28 (D.Nev. 1988) (Nev. law); *Sander v. Providence Hosp.,* 483 F.Supp. 895, 896–97 (S.D.Ohio 1979) (Ohio law); *Cline v. Richards,* 455 F.Supp. 45 (E.D.Tenn.1978) (Tenn. law); *Byrnes v. Kirby,* 453 F.Supp. 1014, 1017–20 (D.Mass.1978) (Mass. law); *Wells v. McCarthy,* 432 F.Supp. 688, 689 (E.D.Mo. 1977) (Mo. law); *Marquez v. Hahnemann Medical College & Hosp. of Philadelphia,* 435 F.Supp. 972, 973–74 (E.D.Pa.1976) (Pa. law); *Flotemersch v. Bedford County Gen. Hosp.,* 69 F.R.D. 556, 557 (E.D.Tenn. 1975) (Tenn. law). *But see Seck v. Hamrang,* 657 F.Supp. 1074 (S.D.N.Y.1987); *Hibbs v. Yashar,* 522 F.Supp. 247 (D.R.I. 1981) (R.I. law); *Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.R.I.1978) (same). Other state law requirements relating to malpractice actions have been applied in federal court as well. *See, e.g., Titchell v. United States,* 681 F.2d 165, 169 (3d Cir.1982) (Pa. case law requiring expert testimony in medical malpractice actions); *DeWitt v. Brown,* 669 F.2d 516, 520–21 (8th Cir.1982) (Ark. case law adopting "locality rule" on the degree of care owed by physicians to their patients and requiring expert testimony); *DiAntonio,* 628 F.2d at 290–91 (Va. statute making opinion of malpractice review panel admissible as evidence); *Ezagui v. Dow Chem. Corp.,* 598 F.2d 727, 737 (2d Cir.1979) (assuming applicability of N.Y.

statute requiring expert testimony); *Woods,* 591 F.2d at 1168–69 (Fla. statute making opinion of malpractice review panel admissible as evidence); *Reeg v. Shaughnessy,* 570 F.2d 309, 317–17 (10th Cir.1978) (Okla. case law requiring exclusion of expert testimony not framed within the "locality rule"); *Tetzlaff,* 683 F.Supp. at 226–28 (Nev. statute requiring each plaintiff to provide security in the amount of $500 per defendant); *Houk v. Furman,* 613 F.Supp. 1022, 1026–27 (D.Me.1985) (Me. statute requiring 90–day prefiling notice in medical malpractice actions); *Richards & Assocs., Inc. v. Boney,* 604 F.Supp. 1214, 1217–18 (E.D.N.C.1985) (N.C. rule of civ. proc. prohibiting requests for relief in excess of $10,000 in professional malpractice actions).

In light of these authorities, the court examines the Iowa expert witness statute. Section 668.11 was adopted by the state legislature in pursuit of substantive policy choices. The legislative history of section 668.11 begins with a bill sponsored by the Senate Committee on Commerce. The proposed committee bill exempted claims based upon regulatory functions or license action from coverage under the state tort claims act, set qualifications for expert witnesses on the standard of care owed by physicians and surgeons, limited the liability of nonmanufacturers for strict liability or breach of warranty claims, provided sanctions for the filing or commencing of frivolous actions, limited the conditions under which punitive damages may be awarded, allowed for structured payment of judgments, required early designation of expert witnesses, and created a liability and liability insurance study commission. *See* S.F. 2265, 71st G.A., 1986 Sess. (March 6, 1986). Section 668.11 finds its first expression in section 9 of the proposed bill:

Sec. 9.  NEW SECTION.  668.11 DISCLOSURE OF EXPERT WITNESSES.

1.  A party in an action pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:

a. The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.

b. The defendant within ninety days of plaintiff's certification.

2. If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in he action unless leave for the expert's testimony is given by the court for good cause shown.

3. This section does not apply to court appointed experts.

Section 668.11 appears as section 31 of the bill which passed the Senate on March 21, 1986, which included additional provisions allowing governmental subdivisions to purchase insurance, self-insure or pool risks; authorizing courts to stay actions until sufficient surety to cover costs is provided by a claimant who has previously filed frivolous suits; prohibiting the stating of money damages demanded; and allowing a "state of the art" defense in comparative fault actions. *See* S.F. 2265, § 31, 71st G.A.1986 Sess. (March 21, 1986). With further Senate and House amendments, Senate File 2265 was adopted by the legislature on May 22, 1986, with additional provisions creating a risk management division within the state department of general services, authorizing liability insurance assistance programs, and reducing by five percent the amount of damages recovered by a person who failed to wear a seat belt. *See* 1986 Iowa Acts ch. 1211.

During its passage through the legislative process, proposed section 668.11 experienced only two changes. First, its applicability was limited to professional liability cases brought against licensed professionals rather than all cases under chapter 668 (comparative fault). *See* 1986 Iowa Acts ch. 1211, § 40 (codified at Iowa Code § 668.11 (1987)). Second, the legislature additionally exempted rebuttal experts called with the approval of the court from the disclosure requirement.

The legislative history of chapter 1211 shows that "the purpose of the statute was to deal with a wide assortment of problems relating to liability and liability insurance." *Thomas v. Fellows*, 456 N.W.2d 170, 172–73 (Iowa 1990); *Guthrie County Bd. of Supervisors v. Frevert–Ramsey–Kobes Architects–Engineers*, 431 N.W.2d 768, 769 (Iowa 1988). Section 668.11 furthers that purpose by requiring early designation of experts and otherwise prohibiting the use of expert testimony. In many malpractice cases, expert testimony is required to support the claims—without such testimony, the case may be dismissed. *See Guthrie County*, 431 N.W.2d at 173. "Early disposition of potential nuisances cases, and those which must ultimately be dismissed for lack of expert testimony, would presumably have a positive impact on the cost and availability of medical services. *Id.* As stated in *Cox v. Jones*, 470 N.W.2d 23, 25 (Iowa 1991), "[I]n establishing a deadline by which both parties must have named their experts, the legislature obviously intended to provide an element of certainty in professional liability cases."

The examination of the expert witness statute and its legislative history and purpose shows that the early designation requirement is bound up with the rights and obligations created by state law in such a way that its application in federal court is required. The early designation requirement may have a significant effect on the outcome of a litigation. Failure to require the early designation of experts in accordance with section 668.11 would encourage forum-shopping and result in inequitable application of the law. Refusing to apply section 668.11 would frustrate state policy choices concerning malpractice liability, the cost and availability of malpractice insurance, and the attendant cost and availability to the public of needed professional services. Application of section 668.11 would not disrupt any essential characteristic of the federal system. Conversely, refusal to apply the rule would further no independent federal interest. Therefore, section 668.11 applies to this state law claim for professional liability brought in federal court.

█ Plaintiff moves, in the alternative, for an extension of time to designate experts. "Good cause under 668.11 must be more than an excuse, a plea, or justification

for the resulting effect." *Cox,* 470 N.W.2d at 25. *See Thomas,* 456 N.W.2d at 172; *Donovan v. State,* 445 N.W.2d 763, 766 (Iowa 1989). At the time defendants removed this action to federal court, it was unclear whether this court would apply section 668.11. The defendants did not raise the issue until well after the 180–day deadline had passed. Accordingly, this court's scheduling order requiring compliance with section 668.11 was not entered until November 6, 1991, significantly past the statutory deadline. Plaintiff's counsel, who offices in California, received the order on Friday, November 15, and mailed the designation of expert witness on Tuesday, November 19; it was filed November 22. Under these circumstances, which by virtue of this ruling should not arise again, good cause exists for extending the time to designate expert witnesses. Therefore, plaintiff's designation will be considered timely.

The defendants' motion to preclude plaintiff's expert testimony is DENIED.

The plaintiff's motion for leave to file a tardy expert witness designation is GRANTED.

IT IS THEREFORE ORDERED that defendants shall designate any expert witnesses which they intend to call within ninety days of plaintiff's designation (Feb. 20, 1992), as required by section 668.-11(1)(b).